Michael F. Ram (Bar No. 104805)
Susan S. Brown (Bar No. 287986)
**ROBINS KAPLAN LLP**
2440 West El Camino Real
Mountain View CA 94040
Tel: (650) 784-4040
Fax: (650) 784-4041
mram@robinskaplan.com
sbrown@robinskaplan.com

Jeffrey B. Cereghino, Bar No. 099480
Matt J. Malone, Bar No. 221545
**ROCK LAW LLP**
101 Montgomery Street, Suite 1800
San Francisco, California 94111
Tel: (415) 433-4949
jbc@rocklawcal.com
mjm@rocklawcal.com

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT FOR THE
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GLEN MEYERS,<br>individually and on behalf of all others<br>similarly situated,<br><br>        Plaintiff,<br><br>    vs.<br><br>BEHR PROCESS CORP.; BEHR<br>PAINT CORP.;  and MASCO CORP.;<br><br>       Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

CLASS ACTION COMPLAINT

Plaintiff Glenn Meyers, individually and on behalf of all others similarly situated, by and through undersigned counsel, alleges as follows:

**NATURE OF CASE**

1.      Approximately 75% of American houses have wooden decks and concrete surfaces.  These surfaces require periodic maintenance to maximize their useful life and maintain their appearances.  Homeowners typically apply paints or stains on their decks and patios to provide a decorative and protective barrier from the elements and to minimize wear and tear.

2.      In 2013, Behr, through a national marketing campaign, released a new patio and deck product exclusively through Home Depot, branded as DeckOver.  Behr represented to homeowners that DeckOver was worth its premium price (3-5 times more expensive than ordinary paints and stains) because it was a more durable coating (5 times thicker) and it could repair decks by filling in cracks and stopping splinters.

3.      But DeckOver is not durable or long-lasting.  Instead, within mere months of application, DeckOver begins to flake, peel, and separate from deck and concrete surfaces.  Thus, rather than providing homeowners with a premium option for reducing maintenance work and improving the look and performance of their patios and decks, DeckOver performs worse than cheaper options and requires hours of scraping, scrubbing, and sanding to remove it (with some homeowners resorting to replacing their decks entirely).

4.      Plaintiff brings this class action suit on his own behalf and on behalf of others similarly situated under California and Ohio consumer protection laws.  Plaintiff seeks an order forcing Behr to stop its deceptive conduct and provide appropriate remuneration to affected consumers.

**JURISDICTION AND VENUE**

5.      This Court has subject-matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1332 (a) and (d), because the amount in controversy exceeds $5,000,000, exclusive of interest and costs, and more than two-

1

thirds of the members of the proposed class are citizens of states different from that of Behr Process Corporation and Behr Paint Corporation.

6.    Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendants' improper conduct alleged in this complaint occurred in, was directed from, and/or emanated from this judicial district. Defendants Behr Process Corporation and Behr Paint Corporation are California corporations with their principal places of business in this District.

## PARTIES

7.    Plaintiff Glen Meyers is a resident and citizen of the State of Ohio.

8.    Defendants Behr Process Corporation and Behr Paint Corporation are California corporations, with their principal place of business in California. Both Behr Process Corporation and Behr Paint Corporation are located at 3400 W. Segerstrom Ave., Santa Ana, California, 92704.

9.    Defendant Masco Corporation is a Delaware corporation, with its principal place of business in Michigan. Masco is located at 20001 Van Born Road, Taylor, Michigan, 48180. Masco acquired Behr Process Corporation in 1999. Masco conducts Behr-oriented marketing and sales operations in Santa Ana, California. Plaintiff refers to Behr Process Corporation, Behr Paint Corporation, and Masco Corporation collectively as "Behr."

## COMMON FACTUAL ALLEGATIONS

### I.    Deck and Patio Restoration

10.    Wooden decks and concrete surfaces are prone to wear and deterioration through exposure to the elements, which leads to scuffing, decay, cracking, and splinters. Periodic maintenance is needed to maximize the surfaces' useful life and to keep up their appearance.

11.    Typically, homeowners maintain these surfaces through application of coatings. Coatings include paints and stains that provide a thin decorative and

CLASS ACTION COMPLAINT

protective barrier (with the stains actually soaking into the fibers themselves). Although paints and stains provide some surface protection, they typically do not improve the surfaces' condition (for example, by fixing cracks or splinters). Paints also need to be reapplied relatively often to maintain their cosmetic and protective benefits.

12.     An alternative coating, which is the focus of this case, is a relatively recent introduction to the marketplace: a protective, restorative coating, known as a resurfacer. Resurfacers are liquid products that are applied in the same manner as paint. They are typically marketed as providing substantially more benefits (at a greater cost) than paints and stains. Resurfacers are expected to provide an attractive appearance akin to what a paint or stain would provide, but better preserve the surface by coating it in a significantly thicker protective barrier. The thicker coating provides the added benefit of filling in large cracks and encapsulating splinters. Resurfacers are designed and expected to last significantly longer than paints and stains, eliminating the need for regular maintenance while at the same time substantially extending the life of wood and concrete surfaces.

13.     Because of their expected added benefits, resurfacers typically cost substantially more than paints and stains. A consumer who spends the extra money to buy a resurfacer may be able to avoid replacing a deck or will have to devote less time and money to maintaining the deck in the years that follow.

**II.     Behr DeckOver**

14.     Behr manufactures a line of deck resurfacers: "Behr's Premium DeckOver." Behr officially introduced its Premium DeckOver product in the spring of 2013, claiming in a press release that DeckOver was an "advanced formula" that "revitalize[s] tired decks, patios, porches and even pool decks, and provides a budget-friendly unique solution that was previously unavailable to consumers." According to Scott Richards, Senior Vice President of Marketing at Behr Process Corporation, this product line was the culmination of "years of research and the latest technology."

CLASS ACTION COMPLAINT

15.    Richards described "easy application and durable protection against the elements, . . . allowing consumers to rejuvenate instead of replacing their decks or concrete surfaces."  About a year later, Behr introduced a Textured DeckOver product.

**III.    Defendants' Marketing Campaign**

16.    Since DeckOver was introduced, Behr has marketed it as a durable and long-lasting alternative to paint and stains, capable of extending the life of surfaces. For example, Behr's website claims DeckOver creates a "[l]ong-lasting, durable finish" that "conceals cracks and splinters up to ¼"" and creates a smooth, slip-resistant finish that also resists cracking and peeling" with "excellent adhesion."  It also describes DeckOver as "5x thicker than standard paints and stains."

17.    Similar representations appear on the product's packaging:

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



The label states that DeckOver "Brings new life to old wood & concrete"; "Covers up to 75 Sq. Ft. in 2 Coats"; "Creates a Smooth, Slip-Resistant Finish"; and Conceals Splinters & Cracks up to ¼"."

CLASS ACTION COMPLAINT

The label also represents:

- "Resists Cracking & Peeling";
- "Durable, Mildew Resistant Finish";
- "Waterproofing, Solid Color Coating";
- "Revives Wood & Composite Decks, Railings, Porches & Boat Docks";
- Great for Concrete Pool Decks, Patios & Sidewalks"; and
- "Interior/Exterior, 100% Acrylic Formula."

18. Behr also airs television commercials advertising DeckOver. The DeckOver television commercials emphasize the same themes as can be found on

6

DeckOver labeling and in-store displays: the ads feature people standing and dancing barefoot on decks, with a voiceover saying not to "let cracks and splinters spoil your fun" and promising DeckOver is "made-to-last," "extends the life of your deck," and is the "ultimate do-over for wood and concrete."

19.     Behr hosts a blog entitled "Colorfully Behr" at www.behr.com/colorfullybehr.  A blog entry dated May 31, 2013, markets DeckOver: "excellent news if you have a wood deck that looks old and weathered, or a pool deck that's cracked and ugly, because you don't have to replace it anymore."  In the comments portion on this DeckOver entry, Behr describes the "life expectancy" of DeckOver as "similar to a high quality solid color wood stain (typically 5-10 years on horizontal surfaces, 15-25 years on vertical surfaces)."  Behr also states on Home Depot's website that DeckOver "can be expected to last as long as a high quality Solid Color Wood Stain," which is "5-10 years on horizontal surfaces and 15-25 years on vertical surfaces."

20.     Behr uses these representations to charge more for DeckOver than it otherwise would, and more than competitors charge for their products.  Behr's overall marketing scheme focuses on DeckOver's superior durability compared to paints and stains and that it is an alternative to deck replacement (which is several times more expensive).  DeckOver, compared to Behr and other companies' paints and stains, covers 3-5 times less area and yet is more expensive per gallon:

| Type | Behr Product | Coverage per gallon | Cost per gallon |
|------|-------------|---------------------|-----------------|
| Resurfacer | DeckOver | "75 sq. ft. in two coats" | $35 |
| Stain | DeckPlus Waterproofing Wood Stain | 250-300 sq. ft. first coat 500-600 sq. ft. second coat | $27 |

CLASS ACTION COMPLAINT

| Paint | Porch & Patio Floor Paint | 400 sq. ft. | $28 |

## IV.    As Defendants Know, DeckOver Is Not a Durable Alternative to Paints, Stains, and Other Resurfacers.

21.    DeckOver is not capable of reliably coating wood and concrete surfaces for more than a short period of time.  It routinely peels, bubbles, and degrades within months of application.

22.    Behr's website has received over 150 consumer complaints since summer 2013 concerning DeckOver's short-lived utility, the damage it causes to the surfaces to which it is applied, and the time and money spent to either rehabilitate or replace decks to which DeckOver was applied.  Several examples of these complaints are excerpted below:

- "I was extremely happy to hear the supposed benefits and ease of use of this new product. … The problem is that upon putting our furniture back on the deck, any slight movement scratches the finish back down to the bare wood. We hosted a party this weekend for 30 people and I now have 10 or so areas to touch up. With the cost and time spent dealing with this product, I expect years of normal wear and tear, not one week. We are disappointed and would recommend going a different route."—June 29, 2013

- "When it dried the deck looked like plastic rather than wood. And then when we placed the outdoor furniture back on the deck we found that the slightest movement of the chairs mars the deck finish. When the dog runs across the deck her wet/muddy paws mark the deck.  The Deck Over finish is too delicate for a deck. We are very disappointed with the product, with Behr and with Home Depot."—August 8, 2013

CLASS ACTION COMPLAINT

- "Don't waste your money on this product if you have an older deck with cracks.  The coverage is not want [*sic*] the product advertised and the paint chips and scratches very easily.  The product is way over priced.  You would come out a lot better just to replace the decking boards."—September 9, 2013

- "Worst product ever!  Waste of money! . . . I bought the Behr Deckover product in order to redo my deck.  I did all the prep work the instructions stated to do . . . I did all of this in the summer of 2013.  It is now February 2014.  The product did not even last one year.the product is already peeling up off of the wood . . . I would have been better to re stain the deck rather than use this product.  I will have to now re-sand all of this off and apply a coat of deck stain to protect the wood."—February 27, 2014

- "Peeling off after 8 months . . . I painted my deck in summer 2013, followed all instructions from the can.  Just after 8 months my deck started to peel off.  Now I have to spend money getting all my deck sanded to be able to get all this deck over removed.—March 10, 2014

CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



(Image from above review dated March 10, 2014)

- "Peeled Badly . . . When I applied the Deck Over product, last summer, it looked beautiful.  But now that winter has ended it's peeling and looks horrible.  I've only had it down for 9 months and now I'm going to have to completely redo my deck.  What an absolute mess!"—April 18, 2015

- "Peeling . . . Did not last one year and very difficult to work with.  You need to offer total refunds at the very least.  There is no way to return the time spent working with this garbage and no way to put a price on the stress caused when the peeling began after the snow melted."—May 10, 2015

- "I was so excited to try Deckover on my deck.  The pictures made it look like an amazing product.  I prepped and sanded the deck using Behr products as I wanted to make sure I applied everything correctly.  After the snow melted this year over 50% of my deckover peeled right off.  I am sad to say that splurging for the more expensive 'better' product certainly did not pay

CLASS ACTION COMPLAINT

off for me.  Product states it will last on a deck for up to 10 years yet it hasn't even lasted a full year on my deck.  I am very disappointed in Behr and their deckover product"—May 12, 2015

- "In less than a year of putting this Deck over on our deck, I started to see some bubbling starting along the trim boards of the deck.  Not much longer and the whole deck showed signs of the bubbling and then complete peeling . . . This was intended as a hot tub deck but now it sits empty as we cannot afford to buy any other stain/paint.  Plus take the time to peel all the defective Behr Deck over paint and put another cleaner on the deck."—October 27, 2016

- "Followed all the instructions . . . Started peeling after about 60 days to a point where large chunks were blowing off.  Now comes the hard part of using sandpaper, sanding discs, chemicals, power washer, scrapers and anything else I can think of to remove what's left.  Behr owes me 48 hours of my life back.  Thank goodness I didn't do the railings and spindles!!!!!"—April 3, 2017

- "This is the worst product I have ever purchased.  Advertised to bring back old wood to life, it ruined what old wood I had and caused me to replace my entire deck!  Would NEVER recommend this product to anyone."—May 9, 2017

23.    The negative reviews on Behr's website are not prominently featured, particularly when compared to positive reviews.  For example, when visiting the page for Behr Premium Deckover, Behr prominently lists the "Latest Featured Reviews" toward the top of the page in large font.  Each of those reviews is positive in nature

CLASS ACTION COMPLAINT

and is highlighted in large gold print.  To locate the many negative reviews, on the

other hand, it is necessary to either click to a separate webpage entirely, or to scroll

toward the bottom of the page to an area that is not visible on most computer monitors

and devices without scrolling down the webpage.  Once near the bottom of the page, it

is possible to toggle from a "Product Usage" tab, which appears by default, to the

"Ratings & Reviews" tab.  Only after that toggle is it possible to see the negative

reviews.  An "Avg. Rating" appears toward the top of the page, but it is in smaller

print than the featured reviews and is in black text, rather than the gold text of the

featured reviews.  Also of note, while Behr's website allows reviews of 1-, 2-, 3-, 4-,

and 5-stars, the posted reviews do not show anything approaching a bell curve

distribution.  Instead, there are fewer 2-, 3-, and 4-star reviews combined than there

are either 1- or 5-star reviews.  One explanation for this would be that Behr or a

surrogate has "stuffed the ballot box," by placing positive reviews to balance out the

hundreds of negative reviews.  This is a fairly common practice for websites that post

customer reviews.

    24.    Home Depot has also received hundreds of DeckOver complaints

through its website:

- "Doing my deck over . . . Don't buy this product.  I hope it holds up during
  the winter.  Otherwise I'll be doing my deck over in the spring.  It definitely
  will not be Behr's DeckOver or anything by Behr for that matter."—August
  3, 2013

- "Peeling after 6 mos . . . I followed all of the directions & replaced all rotted
  deck boards.  Deck over is peeling & bubbling all over my deck!  A
  disaster"—May 14, 2014

- "Did not last a year . . . Labor intensive to install. did not hold up over
  northern Illinois winter.  i would pass."—May 24, 2014

CLASS ACTION COMPLAINT

- "the worst stuff on the market, didn't last 3months and when I want my money back this paint is GARBAGE."—July 3, 2014

- "We used this product on an older deck, after buying our home.  Spent tons of money and time on this project with Deck Over last fall, in September.  It's only May, and the whole area is peeling off. Needs totally redone again, and it hasn't even been a year."—May 14, 2014

- "Worst product I have ever bought.  We used over 6 gallons for our large deck.  The sales person told us it would last 10 year.  We followed the instructions exactly and within SIX months it was peeling!  Not to mention it does not fill in cracks like promised."—June 3, 2015

- "We feel the product was misrepresented by Home Depot and Behr and therefore did not meet our expectations.  It did not do a good job of covering the concrete surface of our lanai."—March 5, 2017

- "I should've read the reviews before using this product.  We actually paid a professional to apply it to our deck.  They followed all of the instructions and it looked great for about a month and then we had a few late spring snow storms not it is peeling right off the wood.  It is starting to look terrible.  What a waste of money!"—May 17, 2017

- "This paint is terrible!!!  Did every step Bahr [sic] called for last summer 2016 to prep deck and paint with deck over.  It is now April or 2017 and my deck is peeling badly.  You can take the paint and peel it up like tape.  Absolutely horrible.  Spent 500.000 (sic) dollars and one week to paint deck and railings."—April 9, 2017.

CLASS ACTION COMPLAINT

- "Within 7 months this product will peal (sic) up.  I have no idea why this product is still on the market.  You will be scraping it off in a year.  Don't waste your time or money on it."—June 6, 2016

- "Mine is bubbling up after ONE month.  Applied exactly as specified.  Horrible product."—October 1, 2016

- "HORRIBLE PRODUCT.  I would never recommend this!!!!! . . . We spent so much money and time using a product that turned out to be an utter disaster.  Home depot should have tested this product thoroughly . . . very laborious, not long lasting, deck looks worse since using product, does not hold up to normal weather conditions, high price for sub-par product."— May 1, 2014

- "This product is just awful, less than a year after application and my deck is peeling and the flakes of paint are literally covering my lawn and being tracked into the house.  We followed all the manufacturer instructions on preparing the wood for this product but all that money and time we spent using this product was a waste.  The worst part is now I have to try to fix it.  Please, please save yourself and do not try this product!"—May 17, 2016

- "We purchased 3 cans and all the supplies needed.  Followed the instructions to a tea.  Looked great for a very short few months and peeled and chipped and now looks worse than it did before all my time, work, and money!!  So.  Mad!!"—May 15, 2015

- "after 6 months this is peeling . . . We are seniors that live on SS and bought this product for our deck.  It was very expensive, but it was highly

CLASS ACTION COMPLAINT

recommended and we used it as the directions recommended.  We had a lot of snow and cold weather this year, but we thought this was the purpose of this product.  We would never recommend this product."—March 20, 2015

25.    It is common for manufacturers and sellers of consumer products to monitor media reports, Internet forums, and other public reactions and treatment of their products.  In May 2016, CBC News published an article entitled: "Behr Deckover subject of customer complaints over peeling paint; Company removed Facebook page with numerous complaints after CBC inquiry."  The article describes, among others, homeowner Paul Rhyno, who first used DeckOver in 2014.  But "[w]ithin about three months after [Mr. Rhyno] put it on, it started peeling off in big swaths and bubbling."  He tried again the following year but got the same results.  The article contains photographs of Mr. Rhyno's damaged deck:

---
15

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28





26.     Negative consumer reactions to Behr's DeckOver can also be found elsewhere across the Internet.  For example, about 100 customers have written complaints about DeckOver on pissedcustomer.com, including the following.

- "I applied deckover last fall and now it is all peeling off and my deck looks worse than when I first did it. I am very disappointed in this product. I spent well over a hundred dollars on this product . . . I thought it was guaranteed to last up to 10 years."—May 15, 2015

- "I spent a great deal of money painting two decks with this garbage. One year later it is peeling off everywhere . . . I now am having to replace several rotted boards, pay for pressure washing again and when cured, repainted. It will obviously cost me more to fix the problem than when I initially paid to have the deck painted, as I am sure a lot of scraping will also have to be done."—October 19, 2016

- "I had this product put on my deck last fall and it began to peel by spring. Now I have multiple places that the deck over has completely peeled off . . . It's a shame you pay hat [sic] much for a product that does not last one year."—December 30, 2016.

27.    Behr also researched and tested DeckOver before beginning to sell it. Given how quickly it becomes apparent that DeckOver is not capable of performing as a durable alternative coating on wood and concrete surfaces, Behr certainly discovered that DeckOver begins to peel, chip, bubble, and crack within months of application before introducing DeckOver to the market.

28.    After it went on the market, complaints were widespread and persistent: Defendants have received phone calls and emails complaining about DeckOver, and consumers have been uploading negative reviews of DeckOver on Behr's own website and elsewhere since summer 2013. Behr reviews the complaints on these websites and has responded to some of them. The complaints on these websites are not prominent. For example, Behr highlights on its DeckOver product page the "Latest Featured Reviews" which consists of four and five star reviews, but only through scrolling well down the page or clicking to a separate webpage is it revealed that there are hundreds of negative reviews. Likewise the reviews on Defendants websites do not follow a bell curve distribution and instead are mostly 1- and 5-star reviews. In

addition, there is at least one report by the media that Behr removed online complaints on its own Facebook page containing DeckOver complaints.

29.     Fixing the damage to one's deck that results from applying DeckOver is difficult and costly.  As the reviews above describe, DeckOver cracks, peels, bubbles, and chips, exposing the underlying surface to the elements.  All these forms of exposure both fail to protect wood from precipitation and trap water onto wooden boards underneath the DeckOver that remains, causing mildew and rot.  Repairing loose areas in patches does not solve these problems as other areas of DeckOver will inevitably loosen.  Full removal of DeckOver requires stripping the deck and reapplying a protective coating, which takes hours.  Given how costly it is to remove DeckOver, re-prepare the surface, and re-coat it, some deck owners resort to replacing their decks entirely.

30.     Yet Defendant continues to sell DeckOver, continue to market it as "durable," "long-lasting," and an alternative to replacing ones deck, and do not warn customers beforehand that the product fails after only a few months, often leaving the surface looking worse than before DeckOver was applied.

31.     As a result, consumers continue to spend hundreds of dollars purchasing and applying DeckOver, and spend time and money removing and replacing DeckOver when it peels, bubbles, chips, cracks, discolors, and damages their decks.

## PLAINTIFF'S EXPERIENCE:

32.     Plaintiff Glen Meyers purchased about six 1-gallon containers of Behr DeckOver in May 2015 from a Home Depot store in Mentor, Ohio.  Mr. Meyers had seen DeckOver advertised in the Home Depot Store.  Mr. Meyers also reviewed the product label before buying DeckOver.

33.     Mr. Meyers applied the DeckOver to his deck, stairs, railing and spindles. in May 2015.  He carefully reviewed the application instructions on the label prior to applying DeckOver, and applied the product as instructed.  Within a few months, by

around September 2015, the DeckOver began to bubble, peel and chip.  Soon after, the DeckOver was peeling off in large strips, exposing the wood underneath.

34.     Had Mr. Meyers known that DeckOver was incapable of providing durable surface coating, he would not have purchased or used the product.

35.     Mr. Meyers continues to own a home with wooden surfaces outside and intends to continue to maintain those surfaces in the years to come, including by purchasing resurfacers or other coatings.  He is concerned that without an injunction forcing Behr to disclose which resurfacers are incapable of providing a long-lasting, durable finish, that he and others may again fall victim to purchasing and overpaying for resurfacers like DeckOver which crack and peel within a year of application.

## CLASS ACTION ALLEGATIONS

36.     This action is brought and may be maintained under Fed. R. Civ. P. 23 as a class action.

37.     Plaintiff seeks to represent the following Nationwide Class and New York Class:

> Nationwide Class:  All persons who purchased a Behr Premium DeckOver product in the United States.

> Ohio Class:  All persons who purchased a Behr Premium DeckOver product in the state of Ohio.

38.     Excluded from both classes are: (1) Defendants, and any entity in which Defendants have a controlling interest or which have a controlling interest in Defendants; (2) Defendants' legal representatives, assigns and successors; (3) the judge(s) to whom this case is assigned, his or her spouse, and members of the judge's staff; and (4) anyone who purchased DeckOver for resale.

39.     Plaintiff and class members seek relief under Rule 23(b)(2).  The injunctive relief Plaintiff and class members seek is a significant reason for bringing this case and, on its own, justifies the prosecution of this litigation.  Plaintiff and class members also seek relief under Rule (b)(3) and/or (c)(4).

CLASS ACTION COMPLAINT

40.    **Numerosity**: Behr has manufactured and distributed DeckOver to at least thousands of proposed class members.  Members of the proposed classes are thus too numerous to practically join in a single action.  Class members may be notified of the pendency of this action by mail, supplemented by published notice (if deemed necessary or appropriate by the Court).

41.    **Commonality and Predominance**: Common question of law and fact exist as to all proposed class members and predominate over questions affecting only individual class members.  These common questions include whether:

a.  Defendants marketed DeckOver as a durable resurfacer capable of providing long-lasting protection for wood and concrete surfaces;

b.  DeckOver is not a durable resurfacer and is not capable of providing long-lasting protection for wood and concrete surfaces, but is instead prone to promptly peeling, chipping, bubbling, and degrading within months of application;

c.  Defendants' marketing of DeckOver was false, deceptive, and misleading to reasonable consumers;

d.  Defendants knew DeckOver was not a durable resurfacer capable of providing long-lasting protection for wood and concrete surfaces and is instead susceptible to peeling, chipping, bubbling, and degrading within months of application;

e.  DeckOver's propensity to peel, chip, bubble, and generally degrade within months of application, rather than provide long-lasting protection for wood and concrete surfaces, would be important to a reasonable consumer;

f.  Defendants failed to disclose DeckOver's propensity for peeling, chipping, bubbling, and degrading within months of application; and

g.  Whether Defendants' conduct violates various state consumer protection statutes.

CLASS ACTION COMPLAINT

42.    **Typicality**: Plaintiff's claims are typical of the claims of the proposed classes.  Plaintiff and the members of the proposed classes all purchased DeckOver, giving rise to substantially the same claims.

43.    **Adequacy**: Plaintiff is an adequate representative of the proposed classes because his interests do not conflict with the interests of the members of the classes he seeks to represent.  Plaintiff has retained counsel competent and experienced in complex class action litigation, and will prosecute this action vigorously on class members' behalf.

44.    **Superiority**: A class action is superior to other available means for the fair and efficient adjudication of this dispute.  The injury suffered by each class member, while meaningful on an individual basis, is not of such magnitude as to make the prosecution of individual actions against Defendants economically feasible.  Even if class members themselves could afford such individualized litigation, the court system could not.  In addition to the burden and expense of managing many actions arising from this issue, individualized litigation presents a potential for inconsistent or contradictory judgments.  Individualized litigation increases the delay and expense to all parties and the court system presented by the legal and factual issues of the case.  By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

45.    In the alternative, the proposed classes may be certified because:

a.    The prosecution of separate actions by the individual members of the proposed class would create a risk of inconsistent adjudications, which could establish incompatible standards of conduct for Defendants;

b.    The prosecution of individual actions could result in adjudications, which, as a practical matter, would be dispositive of the interests of

CLASS ACTION COMPLAINT

non-party class members or which would substantially impair their ability to protect their interests; and

c. Defendants have acted or refused to act on grounds generally applicable to the proposed classes, thereby making appropriate final and injunctive relief with respect to the members of the proposed classes as a whole.

## CHOICE OF LAW ALLEGATIONS

46.    The State of California has sufficient contacts to the conduct alleged herein such that California law may be uniformly applied to the claims of the proposed nationwide class against Behr.

47.    Behr does substantial business in California.  Home Depot, where Behr products are sold, maintains over 200 locations in California.  Behr Process Corporation and Behr Paint Corporation are both headquartered in California, and Behr's promotional activities arise from conduct in the State of California.  Further, a significant portion of the proposed Nationwide Class is located in California.

48.    On the "Standard Sales Terms and Conditions" page of its website, Behr purports to require that the "sale of [Behr's] products" be "construed and interpreted, and the rights of the parties determined, in accordance with the laws of the State of California . . . ."

49.    In addition, the conduct that forms the basis for each and every class member's claims against Defendants emanated from Behr Process Corporation and Behr Paint Corporation's headquarters in Santa Ana, California.  Behr marketing executives are based in California, including Behr Process Corporation's Vice President of Digital Marketing, Masco's Coating Group's Vice President of Marketing Communications, and Behr's Marketing Director.

50.    The State of California also has the greatest interest in applying its law to class members' claims.  Its governmental interests include not only an interest in compensating resident consumers under its consumer protection laws, but also what

the State has characterized as a "compelling" interest in using its laws to regulate a resident corporation and preserve a business climate free of fraud and deceptive practices. *Diamond Multimedia Sys., Inc. v. Super. Ct.*, 19 Cal. 4th 1036, 1064 (1999).

51.     If other states' laws were applied to class members' claims, California's interest in discouraging resident corporations from engaging in the sort of unfair and deceptive practices alleged in this complaint would be significantly impaired. California could not effectively regulate a company like Behr Process Corporation or Behr Paint Corporation that does business throughout the United States if it can ensure that consumers from only one of the fifty states affected by conduct that runs afoul of its laws are compensated.

## TOLLING OF STATUTES OF LIMITATIONS

52.     Discovery Rule: Plaintiff's and class members' claims accrued upon discovery that DeckOver is not a durable resurfacer and is not capable of providing long-lasting protection for wood and concrete surfaces, but is instead prone to promptly peeling, chipping, bubbling, and degrading within months of application. While Defendants knew, and concealed, these facts, Plaintiff and class members could not and did not discover these facts through reasonable diligent investigation until after they experienced the aftermath of DeckOver application and learned that the problem was not isolated to their DeckOver.

53.     Active Concealment Tolling: Any applicable statutes of limitations are tolled by Defendants' knowing and active concealment of the facts set forth above. Defendants kept Plaintiff and all class members ignorant of vital information essential to the pursuit of their claim, without any fault or lack of diligence on the part of Plaintiff.  The details of Defendants' efforts to conceal its above-described unlawful conduct are in its possession, custody, and control, to the exclusion of Plaintiff and class members, and await discovery.  Plaintiff could not have reasonably discovered

CLASS ACTION COMPLAINT

these facts, nor that Defendants failed to disclose material facts concerning its performance.

54.  <u>Estoppel</u>: Defendants was and is under a continuous duty to disclose to Plaintiff and all class members the true character, quality, and nature of DeckOver.  At all relevant times, and continuing to this day, Defendants knowingly, affirmatively, and actively concealed the true character, quality, and nature of DeckOver.  The details of Defendants' efforts to conceal its above-described unlawful conduct are in its possession, custody, and control, to the exclusion of Plaintiff and class members, and await discovery.  Plaintiff reasonably relied on Defendants' active concealment. Based on the foregoing, Defendants are estopped from relying on any statutes of limitation in defense of this action.

<u>Equitable Tolling</u>: Defendants took active steps to conceal and misrepresent material facts relating to DeckOver's performance.  The details of Defendants' efforts are in its possession, custody, and control, to the exclusion of Plaintiff and class members, and await discovery.  When Plaintiff learned about this material information, he exercised due diligence by thoroughly investigating the situation, retaining counsel, and pursuing his claims.  Should such tolling be necessary, therefore, all applicable statutes of limitation are tolled under the doctrine of equitable tolling

## CAUSES OF ACTION

### Count I

### Unlawful, Unfair, and Fraudulent Business Practices

### Cal. Bus. & Prof. Code § 17200, *et seq.*

### (On Behalf of the Nationwide Class)

55.  Plaintiff re-alleges the paragraphs above as if set forth fully herein.

56.  Defendants have violated and continue to violate California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.*, which prohibits unlawful, unfair, and fraudulent business acts or practices.

24

57.     Defendants' acts and practices, as alleged in this complaint, constitute unlawful, unfair, and fraudulent business practices, in violation of the Unfair Competition Law.  In particular, Behr manufactured and distributed DeckOver and authorized and marketed its sale to the public even though DeckOver is not a durable resurfacer and is not capable of providing long-lasting protection for wood and concrete surfaces, but is instead prone to promptly peeling, chipping, bubbling, and degrading within months of application.  Defendants failed to disclose material facts concerning DeckOver's performance at the point of sale and otherwise.

58.     Defendants' business acts and practices are unlawful in that they violate the California Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*, for the reasons set forth in this complaint.

59.     Defendants' acts and practices also constitute fraudulent practices in that they are likely to deceive a reasonable consumer.  As described above, Defendants knowingly misrepresent and conceal material facts related to DeckOver's performance.  Had Defendants not misrepresented and concealed these facts, Plaintiff, class members, and reasonable consumers would not have purchased DeckOver or would have paid significantly less for them.

60.     Defendants' conduct also constitutes unfair business practices for at least the following reasons:

a.  The gravity of harm to Plaintiff and the proposed class from Defendants' acts and practices far outweighs any legitimate utility of that conduct;

b.  Defendants' conduct is immoral, unethical, oppressive, unscrupulous, or substantially injurious to Plaintiff and the members of the proposed nationwide class; and

c.  Defendants' conduct undermines and violates the stated policies underlying the Consumers Legal Remedies Act—to protect

consumers against unfair and sharp business practices and to promote
a basic level of honesty and reliability in the marketplace.

61.    As a direct and proximate result of Defendants' business practices,
Plaintiff and proposed class members suffered injury in fact and lost money or
property, because they purchased and paid for products that they otherwise would not
have, or in the alternative, would have paid less for.  Plaintiff and the proposed
nationwide class are entitled to an injunction and other equitable relief, including
restitutionary disgorgement of all profits accruing to Defendants, because of their
unfair and deceptive practices, and such other orders as may be necessary to prevent
the future use of these practices.

**Count II**

**Violation of California Consumers Legal Remedies Act**

**Cal. Civ. Code § 1750,** *et seq.*

**(On Behalf of the Nationwide Class)**

62.    Plaintiff re-alleges and incorporates by reference the allegations
contained in all preceding paragraphs of this complaint, as though set forth fully
herein.

63.    Defendants are each a "person" within the meaning of Civil Code §§
1761(c) and 1770, and have provided "goods" within the meaning of Civil Code §§
1761(b) and 1770.

64.    Plaintiff and members of the proposed class are "consumers" within the
meaning of Civil Code §§ 1761(d) and 1770, and have engaged in a "transaction"
within the meaning of Civil Code §§ 1761(e) and 1770.

65.    Defendants' acts and practices were intended to result and did result in
the sale of DeckOver, and violate § 1770 of the Consumers Legal Remedies Act for at
least the following reasons:

a.    Defendants represent DeckOver has characteristics, uses, and benefits
which it does not have;

26

b. Defendants represent that DeckOver is of a particular standard, quality, and grade when it is not;

c. Defendants represent that transactions involving DeckOver conferred or involved rights, remedies, and obligations which they do not; and

d. Defendants represent that DeckOver has been supplied in accordance with a previous representation when it has not.

66.     As described above, Defendants manufactured, distributed, and marketed DeckOver for sale to class members while misrepresenting and concealing material facts about DeckOver, including representing that is a durable resurfacer and is capable of providing long-lasting protection for wood and concrete surfaces, when in reality it is prone to promptly peeling, chipping, bubbling, and degrading soon after application.

67.     Had Defendants not misrepresented and concealed material facts about DeckOver, Plaintiff, members of the proposed class, and reasonable consumers would not have purchased or would have paid less for DeckOver.

68.     Pursuant to the provisions of Cal. Civ. Code § 1782(a), Plaintiff will send a notice letter to Defendants to provide them with the opportunity to correct their business practices.  If Defendants do not thereafter correct their business practices, Plaintiff will amend (or seek leave to amend) the complaint to add claims for monetary relief, including restitution and actual damages under the Consumers Legal Remedies Act.

69.     Pursuant to California Civil Code § 1780, Plaintiff seeks injunctive relief, his reasonable attorney fees and costs, and any other relief that the Court deems proper.

**Count III**

**Unjust Enrichment**

**Based on California Common Law**

**(On Behalf of the Nationwide Class)**

CLASS ACTION COMPLAINT

70.     Plaintiff re-alleges the paragraphs above as if fully set forth herein.

71.     As described above, the Behr Defendants marketed, distributed, and sold DeckOver as a long-lasting, durable deck resurfacer without disclosing that in reality, the coating begins to strip and peel off soon after application.

72.     As a result of its fraudulent acts and omissions related to DeckOver, Defendants obtained monies which rightfully belong to Plaintiff and the proposed Nationwide Class members to the detriment of Plaintiff and the proposed Nationwide Class members.

73.     Behr appreciated, accepted, and retained the non-gratuitous benefits conferred by Plaintiff and the proposed Nationwide Class members, who, without knowledge that the DeckOver would not perform as advertised, paid a higher price for the product than it was worth.  Behr also received monies for DeckOver that Plaintiff and the proposed Nationwide Class members would not have otherwise purchased.

74.     It would be inequitable and unjust for Behr to retain these wrongfully obtained profits.

75.     Behr's retention of these wrongfully obtained profits would violate the fundamental principles of justice, equity, and good conscience.

76.     Plaintiff and the proposed Nationwide Class are entitled to restitution of the profits unjustly obtained, plus interest.

**Count IV**

**Violation of Ohio Consumer Sales Practices Act, ORC §1345**

**(On Behalf of the Ohio Class)**

77.     Plaintiff re-alleges the paragraphs above as if fully set forth herein.

78.     Plaintiff and class members are "consumers" within the meaning of ORC §1345.01(D).

79.     Each Defendant is a "supplier" within the meaning of ORC §1345.01(C).

80.     Under the Ohio Consumer Sales Practices Act, it is an unlawful, unfair deceptive act or practice to represent that "the subject of a consumer transaction has

sponsorship, approval, performance characteristics, accessories, uses, or benefits that it does not have" or that "the subject of a consumer transaction is of a particular standard, quality, grade, style, prescription, or model, if it is not." ORC §1345.02(B)(1) and (2).

81.    Defendants offered a solicitation of DeckOver to Plaintiff and class members for personal, family, or household use while engaged in the business of soliciting and effecting consumer transactions.

82.    Defendants committed an unfair, deceptive, and unsconscionable act or practice in connection with these transactions by misrepresenting that DeckOver is a more durable coating than other paints or stains and representing that it can repair decks by filling in cracks and stopping splinters, when in fact, within mere months of application, DeckOver begins to flake, peel, bubble, and separate from deck and concrete surfaces.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter a judgment awarding the following relief:

     a.  An order certifying the proposed classes and appointing Plaintiff's counsel to represent the classes;

     b.  An order awarding Plaintiff and the class members their actual damages, treble damages, and/or any other form of monetary relief provided by law, except that no monetary relief is presently sought for violations of the Consumers Legal Remedies Act;

     c.  An order awarding Plaintiff and the classes restitution, disgorgement, or other equitable relief as the Court deems proper, except that no monetary relief is presently sought for violations of the Consumers Legal Remedies Act;

     d.  An order enjoining Defendants from their unlawful conduct;

CLASS ACTION COMPLAINT

e.  An order awarding Plaintiff and the classes pre-judgment and post-judgment interest as allowed under the law;

f.  An order awarding Plaintiff and the classes reasonable attorneys' fees and costs of suit, including expert witness fees; and

g.  An order awarding such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so properly triable thereby.

Dated:  June 18, 2017                    Respectfully submitted,

**ROBINS KAPLAN LLP**

By: */s/ Michael F. Ram*

Michael F. Ram
Susan S. Brown
2440 West El Camino Real
Mountain View CA 94040
Tel: (650) 784-4040
Fax: (650) 784-4041
mram@robinskaplan.com
sbrown@robinskaplan.com

Jeffrey B. Cereghino
Matt J. Malone
**ROCK LAW LLP**
101 Montgomery Street, Suite 1800
San Francisco, California 94111
Tel: (415) 433-4949
jbc@rocklawcal.com
mjm@rocklawcal.com

*Attorneys for Plaintiff*

30
CLASS ACTION COMPLAINT